## LAW OFFICES OF SUSAN G. KELLMAN
25 EIGHTH AVENUE • BROOKLYN, NEW YORK 11217
(718) 783-8200 • FAX (718) 783-8226 • SGK@KELLMANESQ.COM
FELLOW, AMERICAN COLLEGE OF TRIAL LAWYERS

October 8, 2024

**BY ECF & ELECTRONIC MAIL**

The Honorable Carol Bagley Amon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *United States v. Antony Abreu,* 22 Cr. 208 (CBA)

Your Honor:

      This letter is respectfully submitted on behalf of the defendant, Antony Abreu, in advance of his sentencing scheduled for October 28, 2024.

      On April 23, 2024, Mr. Abreu was convicted of murder-for-hire conspiracy and murder-for-hire. His motions pursuant to Rule 29 and Rule 33 are currently pending before the Court because the trial record is devoid of any evidence that Mr. Abreu entered into an agreement benefiting him financially *before* the murder of Chris Gu on February 12, 2019 (Dkt. 437). Beyond the lack of evidence of a pre-murder agreement, Mr. Abreu has consistently maintained his innocence, and the evidence presented by the government at trial demonstrated, beyond doubt, that the murder was committed by David Yu – not Mr. Abreu. David Yu, the man who met with those who had a motive to harm Mr. Gu.

### Objections to the Presentence Report

      Mr. Abreu objects to the presentence report's description of the offense conduct because it inaccurately portrays his involvement in the crime, particularly in light of the government's own exhibits (1301-A and 1302-A) that show he was in Long Island on the night of the murder. Mr. Abreu strongly disputes the report's references to his "repeated perjury" by testifying on his own behalf. Specifically, Mr. Abreu takes issue with ¶¶ 30, 32, 36, and 44, maintaining that his testimony about his whereabouts on the night of the murder was truthful. Critically, his testimony is corroborated by the government's own evidence – Exhibits 1301-A and 1302-A.

The Honorable Carol B. Amon                                          *United States v. Abreu,* 22 Cr. 208 (CBA)
October 8, 2024

Furthermore, Mr. Abreu strongly opposes the conclusion in the PSR that his decision to testify amounted to obstruction of justice. As his testimony aligns with the geographical data presented by the government at trial, any assertion of perjury is unsupported by the facts. These inaccuracies in the PSR mischaracterize his role in the events and contradict the objective evidence presented by the government.

While Mr. Abreu recognizes that the Court has no discretion regarding the imposition of a mandatory sentence, this case presents an opportunity for the Court to see beyond the government's limited perspective. We will not repeat the arguments set forth in detail in our submissions urging this Court to set aside the jury's verdict given the complete failure of the government to present a scintilla of evidence that Mr. Abreu entered into an agreement to kill Chris Gu – prior to his execution.

Beyond this, we ask your Honor to consider who Antony Abreu truly is. Letters submitted by family, friends and community members offer a starkly different view of Mr. Abreu – one that contrasts sharply with the government's portrayal of a cold, calculating criminal. These letters illustrate a man loved, respected and admired for his integrity, dedication to family and willingness to help others.

## 18 U.S.C. § 3553(a) Factors

Section 3553(a) of Title 18 requires the Court "in every case [to] impose a sentence sufficient, but not greater than necessary to comply" with the statutory purposes of sentencing set forth therein. 18 U.S.C. § 3553(a). Known as the parsimony clause, this provision defines the Court's "overarching duty." *Pepper v. United States*, 131 S.Ct. 1229, 1243 (2011). The Court is to achieve statutory objectives, including considering the defendant's history and characteristics, the nature and circumstances of the offense, the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law and provide just punishment; the need for deterrence; the need to provide the defendant with necessary training, medical care and correctional treatment in the most effective manner; and the need to avoid unwarranted sentence disparities among similarly situated defendants.

The Supreme Court reaffirmed in *Pepper* that the sentencing judge is to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper*, 131 S.Ct. at 1240 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). While the guidelines are the "starting point and the initial benchmark," the Court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 128 S.Ct. 586, 596-97 (2007). Instead, a sentencing court must make an "individualized assessment" of the sentence warranted "based on the facts presented." *Id.* at 597. Section 3553(a) specifically requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the

The Honorable Carol B. Amon                              *United States v. Abreu,* 22 Cr. 208 (CBA)
October 8, 2024

defendant and to craft a sentence sufficient, but not greater than necessary, to serve the statutory purposes of sentencing.

## The Life and Circumstances of Antony Abreu

Antony Abreu was born in the Dominican Republic and legally immigrated to the United States on January 2, 2001, when he was just 12 years old. His family first settled in the Bronx, before moving to Queens. Mr. Abreu grew up with a strong work ethic, which he likely inherited from his father, who worked tirelessly as a maintenance worker. Mr. Abreu watched his father work long hours to support the family, and he instilled those same values in his own life.

Mr. Abreu's family, particularly his two daughters, have suffered immensely since his arrest. Despite separating from their mother, Soiry Acosta, Mr. Abreu remained a dedicated and supportive father. He provided financial assistance, paid for health insurance and continued to help Ms. Acosta with whatever she needed (PSR ¶ 64). His daughters, who had an extremely close relationship with their father, have been unable to fully comprehend his prolonged absence. Their constant refrain asking when their Daddy will return home is perhaps the worst punishment that Mr. Abreu has endured. (PSR ¶ 65). The girls love and miss their father and need him to come home to them. Indeed, "parental incarceration is now recognized as an 'adverse childhood experience' (ACE) of the type that can significantly increase the likelihood of long-term negative outcomes for children." The Osborne Association, *A Call to Action: Safeguarding New York's Children of Incarcerated Parents*, at 12 (May 2011); *see id.* ("[R]esearch suggests that parental imprisonment more often intensifies and compounds, rather than alleviates, the challenges children face."). "Compared to other children, those who experience parental incarceration suffer impairments across four domains of wellbeing: behavior, education, health, and hardship and deprivation." Kristin Turney and Rebecca Goodsell, *Parental Incarceration and Children's Wellbeing, The Future of Children*, Vol. 28, No. 1, Reducing Justice System Inequality, at 148 (Spring 2018). To facilitate visits with his children, we request that the Court recommend that the Bureau of Prisons designate Mr. Abreu to a facility in the NY metro area – if the Court does not set aside his conviction.

## Support from Family

Despite the seriousness of the charges, Mr. Abreu continues to receive unwavering support from those who know him best. As demonstrated in the numerous letters submitted to the Court, Mr. Abreu is described as a hard-working, humble, quiet and respectful family man. These letters tell the story of a man who has positively impacted everyone around him, providing a compelling counter-narrative to the government's portrayal.

**Mr. Abreu's father, Hipolito,** describes his son as "a man of integrity, generous, compassionate, hard-working, protective, motivating, talented, and above

3

all, respectful." He implores the Court to show mercy on Mr. Abreu's daughters, who have been deeply affected by their father's absence and who have fallen into "deep sadness."

**Mr. Abreu's mother, Rosario Bautista,** recalls the Catholic upbringing she and her husband provided for their children. She reflects on Mr. Abreu's involvement in the NYPD Explorer's Program, which speaks to his early aspirations of serving his community as a police officer.

**Mr. Abreu's older sister, Rosarina Abreu,** describes the heavy toll this case has taken on the family. She emphasizes Mr. Abreu's kindness and loyalty, recounting how he has always been a helping hand to those in need – whether they were close friends or strangers. Rosarina also shares a childhood story about Mr. Abreu protecting her from a group of bullies, illustrating his protective nature and commitment to family.

**Mr. Abreu's younger sister, Veronica Abreu,** shares similar sentiments, stating that her brother was always there for her, whether fixing a flat tire or offering a ride to work. She reflects on how Mr. Abreu shielded her from bullies in the neighborhood, expressing that the man described by the government is "far from the true character my brother is; an honest, loving, hardworking, and loyal man."

**Mr. Abreu's brother, Daviel Abreu,** describes Mr. Abreu as "a selfless being" with "a very humane heart." He recalls how Mr. Abreu would drop everything to help others, offering a personal example of how Mr. Abreu assisted with a two-day moving job with no notice

Other family members – **his aunts, cousins, and uncle** – echo these sentiments, underscoring Mr. Abreu's deep commitment to family and community. Whether it was helping his aunt move or guiding his cousins through difficult times, Mr. Abreu 's actions consistently reflect a man who places family and loved ones above all else. All of the family letters are attached as Exhibit A.

## Support from Friends

Many of Mr. Abreu's friends have also come forward to support him, describing the positive influence he has had on their lives. **Adolfo Rosario**, a long-time friend, explains that Mr. Abreu "doesn't wait to be asked for help—he offers it freely, often anticipating a need before it arises."

**Jarenys Fernandez**, a physician's assistant and close family friend, attests to Mr. Abreu's dedication to his family, calling him a "remarkable human being" who became a "devoted father, loving son, and caring friend." Other friends, such as **Olga Mejia** and **Yini Rodriguez**, speak to Mr. Abreu's kindness, loyalty,

The Honorable Carol B. Amon							*United States v. Abreu,* 22 Cr. 208 (CBA)
October 8, 2024

and his impact as a role model to their children. They describe him as a figure of stability and compassion in their lives. Another couple describes how Mr. Abreu was chosen as the godfather of their child and expresses that Mr. Abreu's daughters deserve to have him in their lives, describing Mr. Abreu as "loving, responsible, and deeply caring for the people in his life." Letters from friends are attached as Exhibit B.

## Rehabilitation Potential

Given the unwavering support of Mr. Abreu's family and friends, he has a strong foundation for rehabilitation. His track record of hard work, integrity, and dedication to his daughters and family suggests that he is well-positioned to reenter society successfully. He poses no future threat to public safety, and his potential for rehabilitation should be an important consideration for this Court.

## Harsh Prison Conditions

The conditions at the MDC are well-known to this Court and deserve consideration in any sentencing. The facility has been plagued by violence and inhumane conditions, as highlighted in recent news reports and even judicial decisions. Earlier this year, Judge Jesse Furman, in *United States v. Chavez*, 22-CR-303 (JMF), Dkt. 31 (S.D.N.Y. Jan. 4, 2024), addressed the harsh conditions in the MDC, noting the well-publicized disasters and perpetual lockdowns, largely attributed to staffing shortages. Judge Furman emphasized the need to reduce the prison population as a way to alleviate these horrific conditions.

Moreover, recent incidents at the MDC underscore the violence within its walls. On April 27, 2024, an MS-13 gang member was brutally stabbed 44 times in a shocking incident captured on video. The footage reveals the slow response time from a lone correctional officer, underscoring the dangerous environment in which inmates are confined. Annese, *See it: Video from inside troubled Brooklyn federal jail shows brutal gang stabbing*, N.Y. Daily News, (July 27, 2024, 5:30 PM), https://www.nydailynews.com/2024/07/27/see-it-video-from-inside-troubled-brooklyn-federal-jail-mdc-shows-brutal-gang-stabbing/. The video gives a disturbing peek at what life in the MDC is really like.

Tragically, other inmates have not been as fortunate. On June 7, 2024, **Uriel Whyte** was stabbed to death, and just a month later, on July 17, **Edwin Cordero** was killed after a fight broke out in the facility. Uriel Whyte was murdered on June 7, 2024 after being incarcerated at the MDC for two years awaiting trial on a federal gun case. Annese, *Inmate at Brooklyn's troubled Metropolitan Detention Center is stabbed to death: sources*, N.Y. Daily News, (June 20, 2024, 4:50 PM), https://www.nydailynews.com/2024/06/20/inmate-at-brooklyns-troubled-metropolitan-detention-center-is-stabbed-to-death-sources/.

The Honorable Carol B. Amon *United States v. Abreu,* 22 Cr. 208 (CBA)
October 8, 2024

Edwin Cordero, who was sentenced on a VOSR violation before Judge Ronnie Abrams in the S.D.N.Y. on June 25, 2024, was murdered after a fight broke out on July 17, 2024 at about 2:50 p.m. Fadulu, *Inmate Dies After Fight Breaks Out at Troubled Brooklyn Jail*, N.Y. Times, (July 17, 2024), https://www.nytimes.com/2024/07/17/nyregion/inmate-dies-metropolitan-detention-center.html.

These conditions are not only shocking but inhumane, and the ongoing tragedy at the MDC should weigh heavily on the Court as it considers Antony Abreu's sentencing.

## Conclusion

While the sentence may be mandatory, the letters in support of Antony Abreu illustrate that he is far from the man the government has portrayed him to be. He is a beloved father, a devoted son, a loyal brother and a respected friend – someone who has consistently shown kindness, integrity and a deep commitment to his family and community. These letters speak to the true character of Antony Abreu, which stands in stark contrast to the horror painted by the government. We respectfully ask the Court to consider this fuller, more nuanced picture of Mr. Abreu as it imposes the sentence required by law.

Respectfully submitted,

*Susan G. Kellman*

Susan G. Kellman
Eylan Schulman

cc:   All Counsel

      Antony Abreu